1    Christian McLaughlin, SBN 250885
2    701 Palomar Airport Rd., Ste. 300
      Carlsbad, CA 92011
3    Telephone: (760) 431-2200
      Facsimile:  (760) 431-2244
4    Attorney for:  Manuel Concepcion

5

6

7

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

8

9    MANUEL CONCEPCION, an individual,       Case No: 3:19-cv-01465-BAS-MDD

10            Plaintiff,         1st AMENDED COMPLAINT FOR:
         vs.

11

12    YGRENE, INC., a California corporation;
      YGRENE ENRGY FUND, INC., a Delaware
13    corporation; YGRENE ESCROW, INC., a
      Delaware corporation; PACE FUNDING
14    GROUP, LLC, a California LLC;
      HOMESTAR BUILDERS, INC., a California
15    corporation; HOME ENERGY SOLUTIONS,
16    INC., aka CLEARVIEW., a California
      corporation,
17

18            Defendants.

1: VIOLTAIONS OF TRUTH AND LENDING
    ACT (15 U.S.C. §1601 et seq.)
2: VIOLATIONS OF CALIFORNIA
    ROSENTHAL FAIR DEBT
    COLLECTIONS
    PRACTICES ACT (California Civil Code
    §1788, et seq.)
3: VIOLATION OF THE FAIR DEBT
    COLLECTION PRACTICES ACT
    (15 U.S.C. §1692 Et Seq.)
4: VIOLATIONS OF REAL ESTATE
    SETTLEMENT PROCEDURES ACT
    (12 U.S.C. §2605 et seq.)
5: FRAUD-INTENTIONAL
    MISREPRESENTATION
6: FRAUD-NEGLIGENT
    MISREPRESENTATION
7: VILATIONS OF CALIFORNIA BUSINESS
    AND PROFESSIONS CODE §17200
8: BREACH OF IMPLIED COVENANT OF
    GOOD FAITH AND FAIR DEALINGS
9: BREACH OF CONTRACT
10: ELDER FINANCIAL ABUSE IN
     VILATAION OF WELFARE &
     INSTITTIONS CODE §51610 Et SEQ

**DEMAND FOR JURY TRIAL**

**1ST AMENDED COMPLAINT**

Plaintiff Manuel Conception, by and through counsel, for his Complaint against Ygrene, Inc.; Ygrene Energy Fund, Inc.; Ygrene Escrow, Inc.; PACE Funding Group, LLC; Homestar Builders, Inc.; and Home Energy Solutions, Inc. aka Clearview ("Defendants") alleges as follows:

## OVERVIEW

1. This is an egregious case of elder abuse by predatory lending practices. Plaintiff is a senior citizen (83 years of age), fixed-low-income, single and Hispanic male. Plaintiff receives a gross income of $3034.00 per month. Said income is derived from Social Security ($884.00), military retirement ($1,500.00) and retirement as a janitor from Carlsbad Unified School District ($650.00).

2. Plaintiff's advanced age and other vulnerabilities made him an easy victim of high pressure sales tactics. Plaintiff has lost his primary residence of 30 years, commonly known as 305 Rockledge Street, Oceanside California ("Subject Residence"), from what was literally door to door solicitations peddling green energy/home improvement and financing, namely Property Assessed Clean Energy ("PACE") financing.

3. PACE financing has spawned general contracting companies that are 100% dependent on PACE financing. The contractors send door to door sales people out into the local communities offering what they refer to as energy saving home improvements. All the contractor needs is a signature, then they fund their services through the local PACE programs.

4. **What is PACE Financing and How Does it Work?**

   PACE is a means of financing energy efficiency upgrades, disaster resiliency improvements, water conservation measures, or renewable energy installations of

1ST AMENDED COMPLAINT

residential property.  Examples of energy efficiency and renewable energy upgrades are vast, ranging from adding more attic insulation to installing rooftop solar panels for residential projects.

In areas with PACE legislation in place, governments offer a specific bond to investors or in the case of the open-market model, private lenders provide financing to the building owners to put towards an energy retrofit. The loans are repaid over the selected term (over the course of somewhere between 5 and 25 years) *via* an annual assessment on their property tax bill. PACE bonds can be issued by municipal financing districts, state agencies or finance companies.

## 5.  HOMEOWNER'S PERSPECTIVE OF A PACE LOAN

From a homeowners perspective, PACE financing works largely the same as a traditional home improvement loan.  The homeowner gets approved for a loan, a contractor does the work, the contractor gets paid from the loan proceeds and the homeowner pays for the improvements through regularly installed payments. However, PACE financing is very different and the differences are concealed from the consumer.

## 6.  WHAT THE PACE LOAN REALY IS

PACE programs are created by state legislation authorizing local governmental units to create their own programs.  The local government serves as the creditor and funds qualifying improvements on a resident's home.  The government recoups the expense, with interest, through installment payments over the term of the loan.  The government usually funds PACE programs by issuing bonds backed by the homeowner's obligation to make regular payments.  Often the

1ST AMENDED COMPLAINT

payment obligation is embedded into the homeowner's property tax taking a super

priority position to all other encumbrances on title.  If the homeowner fails to

make the payments, he or she risks losing the home to foreclosure.

One of the most notable characteristics of PACE is the fact that it is structured as

a property tax assessment, and as such it receives a super priority title position on

a borrower's home.  This unique characteristic guarantees its repayment in

virtually every scenario, hence no consideration is given to the borrower's

finances or ability to repay the loan.

## 7.  PROBLEMS WITH PACE FINANCING

In the PACE model, local governments contract with private groups to create,

bundle and sell the product, much like we saw in the mortgage crisis.  Unlike

traditional mortgage debt, PACE loans have no underwriting, extremely limited

(is any) disclosures and fail to give any consideration to a homeowner's income,

debts or ability to repay the obligation.  They have the highest priority available to

real property encumbrances, hence they will always be paid.

The typical homeowner with a PACE assessment will probably also have a

traditional mortgage. The vast majority of mortgage servicers track the payment

status of property tax assessments.  Servicers do so because unpaid property taxes

pose a risk to the mortgage holder's security interest, and create significant

expenses to the mortgage holder if left unpaid.  Most mortgages require the

borrower to make regular payments into an escrow account.  The servicer then

makes the tax payments when they come due.

1ST AMENDED COMPLAINT

The net result is that the consumer's mortgage payment simply increases to cover the PACE debt.  If the escrow account does not have available funds, the mortgage servicer will advance the necessary funds and then demand payment from the consumer.  If the consumer can't pay, the mortgage servicer places them in default and initiates the foreclosure process, which brings penalties, interest and fees associated with the foreclosure itself.

## 8.   PACE FINANCING AND THE LOW INCOME HOMEOWNER

The door to door solicitors peddling services and PACE loans are the general contractors.  The contractor's sales team encourage low income households to take on unaffordable debt with nothing more than a signature needed.  The more signatures, the more income for the contractor.

On paper the value of a particular house may appear the same regardless of who owns it.  But to a low-income homeowner, a house is often the only asset of any value and therefore provides this demographic priceless stability.  That means it is essential for low income households to avoid putting their home at risk.

PACE loans are based on the liquidation value of home, rather than borrower's independent ability to repay.  PACE loans depend on the superiority of the PACE lien as to all other real property encumbrances to guarantee re-payment.  This is by definition asset base lending, and asset based lending provides a clear path for predatory lending practices.  Combine this with targeting low income homeowners, many of which are senior citizens, and we have devastating results.  Worse, once the contractors start work they often upsell the homeowners for additional services and simply roll the additional debt into the PACE loan.

9. PACE loans provide consumer debt, secure said debt on a homeowner's real property and are mortgage-related financing. To treat said loans any differently allows for them to escape virtually every consumer protection law ever created.

10. PACE loans carry the same risks as traditional home improvement financing and/or the same risk as mortgage loans, yet PACE loans fail to adhere to consumer protection laws, fail to adhere to consumer debt practices and mortgage related financing rules such as those imposed by the federal Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Federal Trade Commission's Preservations of Consumer's Claim and Defense rule ("FTC Holder Rule"), The Home Ownership Equity Protection Act ("HOEPA"), The Consumer Legal Remedies Act ("CLRA"), the Dodd-Frank Act and many others.

**WHAT HAPPENED TO PLAINTIFF**

11. PACE loans have no underwriting: A quick review of the Plaintiff's income and existing mortgage would have shown the Plaintiff's vicarious financial situation. Significant to the following, plaintiff is 83 years of age, extremely unsophisticated and is suffering from the early stages of dementia. Plaintiff has owned his home, commonly known as 507 Rockledge Street, Oceanside, California ("Subject Residence"), for the past 30 years.

   a. Plaintiff's fixed income was not enough to even pay his existing mortgage. To make his mortgage affordable and to ensure this senior could keep his home, the mortgage servicer modified his loan.

   b. Plaintiff owed approximately $468,727.84, and was receiving a fixed gross (before tax) income of $3,034.00 per month, which was woefully insufficient to pay said mortgage debt.

c.  The modification placed $168,305.57 of the total mortgage debt into a deferred account for the next 25 years (Plaintiff is 83 years old).  The differed amount was a balloon payment that received no interest.

d.  The remaining balance of $300,422.27 was stretched out to be repaid over the next 30 years (again Plaintiff is 83 years old) and was given a fixed interest rate of 2.0% for the life of the loan.

e.  Such concessions of Plaintiff's mortgage servicer are notable and brought Plaintiff's monthly mortgage payment to $1,234.57.  The payment allowed Plaintiff both financial security and physical/housing stability.

f.  The PACE loan gave absolutely no consideration to Plaintiff's financial abilities, no consideration was given to Plaintiff's physical disabilities, and no consideration was given to Plaintiff's need for stable housing.

12. The PACE financing increased the monthly mortgage amount to $1,937.56.

13. Plaintiff is in this situation because door to door sales persons, peddling PACE financing, convinced him that he needed roof repairs and that his house needed to be painted, and that a government program would take care of it all.  Significantly the door to door sales persons worked directly for the contractors, had no special licensing, no financial advisory credentials and was not even a licensed contractor.  The sales person was simply a commissioned employee tasked with signing up as many people as possible.

14. Plaintiff was led to believe that his home needed improvements, such was arguably false.

15. Plaintiff was led to believe he was engaging government funding, such was absolutely false.

16. Plaintiff was led to believe that the energy savings would exceed the additional costs associated with the improvements, such was absolutely false.

17. Plaintiff was promised a 20 year repayment plan, such was false as Plaintiff received a 5 year property tax assessment.

18. Plaintiff had absolutely no ability to repay the PACE financing.

19. When the PACE loan raised his monthly mortgage payment, Plaintiff could only continue to pay his prior mortgage payment of $1,234.57 and Plaintiff fell further and further behind to his mortgage holder.

20. Plaintiff's servicer began paying the tax assessment and as a result added the debt, penalties and interest for such to Plaintiff's loan, which began Plaintiff's arrearages.

21. Soon the mortgage servicer initiate foreclosure proceedings, stopped taking the partial payments, and foreclosure fees accumulated removing even the most remote possibility for Plaintiff to recover.

22. In June of 2019 Plaintiff's home was lost to foreclosure.

23.  Plaintiff is being evicted by the new homeowners, and is soon to be a displaced 83 year old Hispanic male with limited financial means and no resources available.  Plaintiff will be homeless.

24. The egregious interfusion of predatory lending practices and financial elder abuse has resulted in horrific and devastating financial consequences to this unsuspecting senior.

25. This action is to seek redress and to restore to Plaintiff the financially security and housing stability that he had prior to this predatory assault upon his finances, home and remaining life.

1ST AMENDED COMPLAINT

**JURISDICTION AND VENUE**

26. This Court has subject matter jurisdiction based on federal question under 28 U.S.C. §1331 and 1367, and 15 U.S.C. §1692, and 15 U.S.C. §1640(e). This is an action asserting violations of federal trade statutes commonly known as TILA, RESPA, and Regulation Z, the Fair Debt Collection Practices Act, various other federal laws, with additional claims under California law.  These claims all arise out of the same controversy and sequences of events.

27. There is also diversity amongst the parties and an amount in excess of the jurisdictional requirements.

28. Venue is proper in the Court pursuant to 28 U.S.C. §1391(b)(2), in that all, or substantial part, of the events giving rise to the claims asserted herein occurred in this judicial district.

29. This Court has personal jurisdiction over the parties as all Defendants engage in business within the State of California, County of San Diego, and thus have sufficient contacts.

30. This Court has jurisdiction over the state claims by virtue of pendant jurisdiction.

**DEFINITIONS**

31. As used in this Complaint

    a.  The term "TILA" means Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended.  TILA which took effect on July 1, 1969, is intended to promote the informed use of consumer credit by requiring creditors to disclose credit terms and costs, requiring additional disclosures for loans secured by consumers' homes, and permitting consumers to rescind certain transactions that involve their principle dwellings.

1ST AMENDED COMPLAINT

b.  The term: amount financed," "annual percentage rate," "consumer," "consumer-credit," "consummation," "credit," "creditor," "dwelling," "finance charge," "mortgage," "open-end credit," "payment schedule," "points and fees," "residential mortgage transaction," "security interest," and "total Payments" are defined as set forth in §§ 103 and 128 of TILA, 15 U.S.C. §§ 1602 and 1638, and §§ 226.2, 226.4, 226.18, 226.22, 226.32, and 226.33 of Regulation Z, 12 C.F.R §§ 226.2, 226.4, 226.18, 226.22, 226.32 and 226.33.

c.  The term "Regulation Z" means the regulation the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended.  The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp.1, as amended.

## PARTIES

32. Plaintiff Manuel Concepcion is an elderly single Hispanic male.  Mr. Concepcion was born in 1936, he is currently 83 years old, respectfully at all relevant times Plaintiff has been substantially over 65 years of age. Plaintiff has maintained his primary residence at 507 Rockledge Street, Oceanside, CA 92054 for the past thirty (30) years.  At all times mentioned herein, Plaintiff has been living on a fixed income from Social Security ($884.00/month), meager pensions from military ($1500.00/month) and Carlsbad School District ($650.00/month).  Plaintiff is not a sophisticated borrower and suffers from the early stages of demantia.

33. Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, Defendant Ygrene Energy Fund Inc. was, and is, a Delaware corporation doing business in the State of California.  Ygrene Energy Fund Inc. operates in conjunction with Ygrene

1ST AMENDED COMPLAINT

Inc. and Ygrene Escrow Inc. as a specialty finance firm. The Company supplies funding for residential, commercial, and industrial renewable energy and energy efficiency programs.

34. Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, Defendant Ygrene, Inc., was, and is, a California coporation, operates in conjunction with Ygrene Energy Fund Inc. and Ygrene Escrow Inc. as a specialty finance firm. YGrene Inc. claims to be a national leader in residential and commercial clean energy financing via PACE

35. Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, Defendant Ygrene Escrow Inc. was, and is, a Delaware corporation, doing business in the State of California, and works with Ygrene Inc. and Ygrene Energy Fund Inc. as a specialty finance firm.

36. Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, Defendant PACE Funding Group, LLC, was, and is, a California Limited Liability Company. PACE Funding Group, LLC, is as a specialty finance firm. The Company supplies funding for residential, commercial, and industrial renewable energy and energy efficiency programs.

37. Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, Defendant HomeStar Builders Inc. was, and is, a California corporation doing business in the State of California as a general contractor and provides PACE funding to pay for its services.

38. Plaintiff is informed, believes, and thereon alleges, that at all times mentioned herein, Defendant Home Energy Solutions, aka Clearview, was, and is, a California corporation

1ST AMENDED COMPLAINT

doing business in the State of California as a general contractor and provides PACE funding to pay for its services.

39. Plaintiff is informed, believes and on that basis alleges that at all pertinent times each of the Defendants was the agent of each of the remaining Defendants, and/or acted with their consent, ratification and authorization, and in doing the acts alleged herein, each of the Defendants acted in such capacity with respect to the remaining Defendants.

40. Plaintiff is informed, believes and thereon alleges, that Defendants, inclusive, sold Plaintiff services and PACE funding, in connection with the Subject Residence.

41. In the course of offering and extending credit to consumers, Defendants have failed to provide material information required by TILA, and other applicable consumer protection laws, including loan terms prohibited by TILA, engaged in unfair or deceptive acts or practices, negligence, fraud and financial elder abuse.

## FACTUAL ALLEGATIONS

42. The core of this action arises out of the solicitation and misrepresentations for a PACE loan to fund improvements to the Subject Residence, resulting in the inevitable foreclosure of said home.

43. In March of 2016, Plaintiff answered a knock on the door of the Subject Residence and was met with a sales representative from Home Energy Solutions, aka Clearview ("Clearview"). The sales representative complimented Plaintiff on his home.

    d. The sales representative told Plaintiff that he was eligible to receive funding through a government program called PACE.

    e. That the funds were available to provide Plaintiff energy saving improvements to his home of 30 years.

f.  That said energy saving improvements would pay for themselves over time.

g.  That the sole fact that he was a homeowner qualified him for the government program without anything further.  Just sign hear and we can start.

h.  That the repayment term was 20 years.

i.  That no payments would be due for 12 months.

44. The representative convinced Plaintiff the he needed a new roof at a cost of $18,425.00 and told Plaintiff not to worry because the energy savings benefits of such would negate the cost, as that was the purpose of the PACE program.

45. Work began in March of 2016. Within days of the work beginning, Clearview began to upsell Plaintiff adding another $1,200.00 in services to the existing loan which is stated to be "20 years," then again on another $2,170.00 in services to the loan which again is stated to be "20 years."

46. After the roof was completed, Plaintiff was approached by a sales person from HomeStar Builders Inc. ("HomeStar"), who provided much of the same sales pitch that the Clearview sales person provided.

47. The HomeStar sales person convinced Plaintiff that his house needed to be painted stating that he was still eligible to receive funding through PACE.  That painting your home is an energy saving improvement and such would pay for itself.

48. On, or around January 5, 2017, the HomeStar sales person provided Plaintiff a very limited, one page, disclosure titled PACE PROGRAM TERMS.

49. Both Clearview and HomeStar provided disclosures that the funding would be through the government PACE program, both stated a 20 year repayment term, both stated that no payments would be due for the first year, both assured Plaintiff that the energy savings

1ST AMENDED COMPLAINT

would pay for the financing, and both stated that Plaintiff's limited income would not be an issue to qualify or to repay.

50. The total cost of work performed was approximately $49,820.00.

51. In 2018, Plaintiff received a mortgage loan statement from his Mortgage services Chase, stating his payments had increased from the modified loan term of $1,234.57 to $1,937.56 due to a property tax assessment.

52. Plaintiff noted that he had received no energy savings in regard to the Subject Residence, and that the increase far exceeded his financial abilities, and Plaintiff soon learned that the property tax assessment placed on the property to repay the amount financed was only 5 years verses the 20 he was promised.

53. Plaintiff explained to Chase that he could never afford such an increase. Chase responded that they had nothing to do with the property tax assessment and that he needed to pay the new amount.

54. Plaintiff, could only afford to continue to pay the $1,234.57 amount and continued to do so falling further and further behind.

55. Chase transferred the loan to Carrington Mortgage and Carrington initiated foreclosure proceedings, and Plaintiff's home was foreclosed upon in June of 2019.

56. Plaintiff is currently being evicted from his 30 year residence by the new owners.

57. The services of Clearview and HomeStar, funded by the Ygrene entities and Pace Funding Group, LLC via PACE, created a super priority encumbrance on Plaintiff's home of 30 years. The debt was structured for a 5 year repayment term. Plaintiff was intentionally misled to his detriment, just as the Defendants had intended.

58. Defendants, knew Plaintiff's monthly income was fixed, Defendants induced Plaintiff to obligate himself to make monthly mortgage payments for an amount that far exceeded his means.

59. On information and belief, Plaintiff alleges that Defendants Homestar Builders and Clearview regularly solicit and approve PACE financing through the Ygrene entities and Pace Funding, LLC to unqualified, low income, senior citizen borrowers, such as Plaintiff. Defendants target said demographic as they are easy prey, as there is no underwriting or consideration given to the borrower's ability to repay. This demographic of homeowner will usually have a home in need of energy saving repairs and said demographic of homeowner would never qualify for traditional lending as such considers the borrower's finances and ability to repay.

60. Plaintiff entered into a consumer credit transaction with Clearview, HomeStar, Ygrene entities and Pace Funding Group, LLC via the actions of all Defendants.

61. Defendants solicited and extended consumer credit securing such in a super priority position on Plaintiff's home.

62. Said consumer loan/credit is subject to the Federal Truth and Lending Act, 15 U.S.C. § 1601 et seq. and its implementing regulations, 12 C.F.R. Part 226 "Reg. Z."

63. Defendants were required to provide Plaintiff with certain disclosures pursuant to "TILA." Under TILA and Regulation Z, defendants were required to clearly and conspicuously disclose the amount financed, the finance charges and terms amongst other things in connection with the consumer credit.

64. Plaintiff did not receive the required documents and disclosures under TILA and much of the information provided was wrong.

1ST AMENDED COMPLAINT

65. The Defendants failures led to the inevitable foreclosure of the Subject Residence.

66. On information and belief, Plaintiff alleges that Defendants, in committing these acts, alleged in this Complaint, are engaged in a pattern of unlawful activity in this judicial district, and others.

**DEFENDANTS' ARBITRATION CLAUSES, IF ANY, ARE NOT ENFORCEABLE UNDER FEDERAL LAW**

67. Regulation Z amendments made by the CFPB's final rule on loan originator compensation issued in January 2013 bans "terms that require arbitration or any other non-judicial procedure to resolve any controversy or settle any claims arising out of the transaction" in any agreement for a closed-end loan secured by a dwelling or an open-end loan secured by the consumer's principal dwelling. "Dwellings" include mobile homes and trailers used as residences.

**FIRST CAUSE OF ACTION**
**VIOLTAIONS OF TRUTH AND LENDING ACT**
**15 U.S.C. §1601 et seq.**

**(Against All Defendants)**

68. Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

69. The subject financing is a consumer credit transaction subject to the provisions of TILA. Defendants are "creditors" as defined by 15 U.S.C. §1602. The subject transactions between Plaintiff and Defendants was for consumer credit wherein credit was extended to Plaintiff, which was secured by an interest in the Subject Residence.

70. As a consumer credit transaction, Defendants were required to provide Plaintiff with mandatory Truth-in-Lending disclosure statements and notice of the borrower's right to rescind, among many other disclosures.

71. In the course of soliciting and executing the consumer loan and/or extending other consumer credit, said Defendants in numerous instances have violated the requirements of TILA and Regulation Z, said violations include but are not limited to the following:

    a.   Failing to disclose, or accurately disclose, the following information:

          i.  the amount financed, in violation of § 128(a)(2) of TILA, 15 U.S.C. §1638(a)(2), and §226.18(b) of Regulation Z, 12 C.F.R. §226.18(b) in that in February and May of 2016 Clearview provided none of the required disclosures, and the loan term was explicitly stated to be 20 years when in reality it was only 5. In February of 2017 HomeStar provided woefully insufficient disclosures, which mispresented the total amount borrowed, failed to state the applicable interest and misstated the term of the loan to be 20 years when in reality it was only 5.

         ii.  The finance charge, in violation of §§ 106 and 128(a)(3) of TILA, 15 U.S.C. §§ 1605 and 1638(a)(3), and §§ 226.4 and 226.18(d) of Regulation Z, 12 C.F.R. §§ 226.4 and 226.18(d) in that in February and May of 2016 Clearview provided none of the required disclosures regarding finance charges. HomeStar provided woefully insufficient disclosures, none of which disclosed finance charges.

        iii.  The annual percentage rate, in violation of §§ 107 and 128(a)(4) of TILA, 15 U.S.C. §§ 1606 and 1638(a)(4), and §§ 226.18(e) and 226.22 of

1ST AMENDED COMPLAINT

Regulation Z, 12 C.F.R. §§ 226.18(e) and 226.22; in that in February and May of 2016 Clearview provided none of the required disclosures regarding interest rates. HomeStar provided woefully insufficient disclosures, none of which disclosed interest rates.

    iv.  the payment schedule, in violation of § 128(a)(6) of TILA, 15 U.S.C. § 1638(a)(6), and §226.18(g) of Regulation Z, 12 C.F.R. §226.18(g); in that both Clearview and HomeStar stated and disclosed, in writing, the loan repayment term would be 20 years.  The term in reality was 5 years.

    v.  the total of payments, in violation of §128(a)(5) of TILA, 15 U.S.C. § 1638(a)(5), and § 226.18(h) of Regulation Z, 12 C.F.R § 226.18(h); in that both Clearview and HomeStar stated and disclosed, in writing, the loan repayment term would be 20 years.  The term in reality was 5 years.

    vi.  any dollar or percentage charge that may be imposed before maturity due to a late payment, other than a deferral or extension charge, in violation of §128(a)(10) of TILA, 15 U.S.C. § 1638(a)(10), and §226.18(I) of Regulation Z, 12 C.F.R. §226.18(1).  None provided.

b.  making consumer credit disclosures that do not reflect the terms of the legal obligations between the parties, in violation of § 226.17(c)(1) of Regulation Z, 12 C.F.R. §226.17(c)(1)

72. By failing to disclose, or accurately disclose, material credit information, as described above, all Defendants have engaged, and continue to engage, in deceptive acts or practices.

73. Defendants caused consumer credit to be extended and/or extended consumer credit to Plaintiff without regard for his ability to repay, and may have also falsified the fair market value of the Subject Residence.

74. As a result of these TILA violations, among others, Defendants are liable to Plaintiff in the amount of twice the actual damages to be established at trial, and costs in accordance with 15 U.S.C. §1640(a).  Plaintiff is also entitled to: the return of any money Plaintiff paid to anyone, statutory damages, costs and reasonable attorney fees, and such other relief as this Court deems just and proper.

75. As a result of Defendants misconduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.  Moreover Defendants' conduct was willful, malicious, and outrageous, and therefore punitive/exemplary damages are warranted and demanded.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT
### California Civil Code §1788, et seq.
### (Against All Defendants)

76. Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

77. Defendants' actions constitute violations of California Civil Code §1788 et seq., also known as the California Rosenthal Fair Debt Collection Practices Act, in that they took

actions prohibited by law, including without limitation; falsely stating the amount of debt; increasing the amount of debt by including amounts not permitted by law or contract; misrepresented the payment terms, failed to state applicable interest rates, all improperly causing the foreclosure of the Subject Residence; and using unfair and unconscionable means in an attempt to collect a debt.

78. Defendants' misconduct has caused Plaintiff to suffer actual damages including, without limitation; severe emotional distress such as loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression.  Plaintiff has now lost his primary residence of 30 years.

79. As a result of Defendants' misconduct, Plaintiff is entitled to actual damages and statutory damages in an amount to be proven at trial.  Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive/exemplary damages are warranted and demanded.

80. Pursuant to the controlling contractual document(s) and applicable law, Plaintiff is entitled to recover their costs and reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §1692 Et Seq.**
**(Against All Defendants)**

81. Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

82. Defendants violated 15 U.S.C. §1692f by attempting to collect and collecting an amount not authorized by the agreement creating the debt or permitted by law.

1ST AMENDED COMPLAINT

83. As a result of the above violations of the FDCPA, Defendants are liable to Plaintiff for Plaintiff's actual damages, statutory damages, and costs and attorney's fees.

84. Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive/exemplary damages are warranted and demanded.

### FOURTH CAUSE OF ACTION
**VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT**
**12 U.S.C. §2605 et seq.**
**(Against All Defendants)**

85. Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

86. The subject debt was mortgage related financing and is therefore subject to the provisions of the Real Estate Settlement Procedures Act set forth at 12 U.S.C. §2605 et seq. ('RESPA")

87. A violation of RESPA is also made unlawful under California state law by financial §50505, which states, "Any person who violates any provisions of [RESPA] or any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

88. Plaintiff is not certain at this time exactly which Defendant were actually the servicer(s) of the loan at any given time.  However, due to the conspiratorial nature of the misdeeds alleged herein, and also due to Defendants' general failure to properly advise Plaintiff as to the roles and identities of the various entities that were handling the financing at any given time, these allegations are made as to all Defendants.

1ST AMENDED COMPLAINT

89. Defendants violated RESPA at the time of closing the subject financing by failing to provide and accurately comply with disclosure requirements in that *inter alia*. Defendants did not provide a Servicing Statement as set forth in 12 U.S.C. § 2605(a); Reg. X §3500.21(b).

90. Plaintiffs are further informed, believe and thereon allege that Defendants also received money and/or things of value for referrals of services related to the subject financing, in addition to charging Plaintiff for services that were unnecessary and/or never rendered, in that they conspired to up sell Plaintiff and incorporate extra fees into Plaintiff's financing.

91. Plaintiff is informed, believes and thereon alleges, that Defendants, have engaged in a pattern of practices of non-compliance with requirements of RESPA.

92. As a direct and proximate result of Defendants' failures to comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit. Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, cost and reasonable attorney's fees incurred herein.

93. Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive/exemplary damages are warranted and demanded.

## FIFTH CAUSE OF ACTION
### FRAUD-INTENTIONAL MISREPRESENTATION
#### (Against All Defendants)

94. Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

95. As alleged herein, Defendants have made several representations to Plaintiffs regarding material facts concerning the PACE financing and how such related to plaintiff and the Subject Residence, including, but not limited to, the following:

    c.  That he needed repairs to his home. Given his advanced age, goals and fixed finances the repairs were simply unnecessary and not needed.

    d.  That he was eligible to receive funding through a government program called PACE.

    e.  That the funds were available to provide Plaintiff energy saving improvements to his home of 30 years.

    f.  That said energy saving improvements would pay for themselves over time.

    g.  That the sole fact that he was a homeowner qualified him for the government program without anything further.  Just sign hear and we can start.

    h.  That the repayment term was 20 years.

96. Defendants' representations concerning the work, relationship and financing were material to Plaintiff's decision to engage the improvements and to fund such with PACE financing, and these representations were false.

97. Defendants made the representations to Plaintiff with knowledge of their falsity or with reckless disregard for their truth or falsity.

98. Defendants made the representations to Plaintiff with knowledge and intent that the Plaintiff would rely on the representations and with the intent to deceive Plaintiff and to induce Plaintiff into consummating the work and financing.

1ST AMENDED COMPLAINT

99. In reasonable and justifiable reliance on Defendants' representations, and without knowledge of their falsity, Plaintiff was induced to his detriment to proceed with the financing.

100.     But for the Defendants' representations, Plaintiff would not have consummated the financing.

101.     As a result of Defendants' intentional and fraudulent misrepresentations and Plaintiff's reasonable and justifiable reliance thereon, Plaintiff has been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

102.     Defendants' conduct was willful, oppressive and fraudulent, and an award of punitive damages is justified in an amount to be proven at trial.

103.     Pursuant to the controlling contractual document(s) and/or applicable law, plaintiff is entitled to recover his costs and reasonable attorney fees.

104.     Trebling of **all remedies** should be ordered pursuant to Civil Code §3345.

## SIXTH CUASE OF ACTION
### FRAUD-NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

105.     Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

106.     As alleged herein, Defendants have made several representations to Plaintiff regarding material facts concerning the financing and how such relates to Plaintiff and the Subject Residence, including, but not limited to, the following:

i.  That he need repairs to his home. Given his advanced age, goals and fixed finances the repairs were simply unnecessary and not needed.

j.  That he was eligible to receive funding through a government program called PACE.

k.  That the funds were available to provide Plaintiff energy saving improvements to his home of 30 years.

l.  That said energy saving improvements would pay for themselves over time.

m.  That the sole fact that he was a homeowner qualified him for the government program without anything further.  Just sign hear and we can start.

n.  That the repayment term was 20 years.

107.    Defendants' representations concerning the financing, their relationship and how such relates to Plaintiff and the Subject Residence were material to Plaintiff's decision to engage the financing and work performed, and these representations were false.

108.    Defendants made these representations with knowledge of their falsity or without a reasonable basis to believe that they were true and with the knowledge or expectation that Plaintiff would rely on the representations.

109.    In reasonable and justifiable reliance on Defendants' representations concerning the work, financing and how such related to Plaintiff and the Subject Residence, and without knowledge of their falsity, Plaintiff was induced to his detriment to proceed with the work and financing which was secured against his primary residence.

110.     But for Defendants' representations concerning the work, financing and how such related to Plaintiff and the Subject Residence, Plaintiff would not have engaged the work or financing of such.

111.     As a result of Defendants' negligent misrepresentations and Plaintiff's reasonable and justifiable reliance thereon, Plaintiff has been injured in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

112.     Defendants' conduct was reckless, oppressive and misleading, and an award of punitive damages is justified in an amount to be proven at trial.

113.     Pursuant to the controlling contractual document(s) and/or applicable law, plaintiff is entitled to recover his costs and reasonable attorney fees.

114.     Trebling of **all remedies** should be ordered pursuant to Civil Code §3345.

## SEVENTH CAUSE OF ACTION
### VILATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200
### (Against All Defendants)

115.     Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

116.     Plaintiff is informed, believes and thereon alleges, that Defendants, committed unlawful , unfair and/or fraudulent business practices, as defined by California Business & Professions Code §17200, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

117.     As a result of Defendants' misconduct, Plaintiff has suffered various damages and injuries according to proof at trial.

1ST AMENDED COMPLAINT

118.     Plaintiff seeks injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

119.     Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other relief as the Court may deem just and proper.

120.     Trebling of **all remedies** should be ordered pursuant to Civil Code §3345.

**EIGTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against All Defendants)**

121.     Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

122.     Plaintiff fully and faithfully performed all of the covenants, terms, conditions and obligations required under the various agreements with Defendants.

123.     Defendants breached the agreement(s) with Plaintiff by, among other things, failing to provide Plaintiff with an affordable loan given Plaintiff's fixed income and age, further Defendants failed to provide Plaintiff a 20 year repayment term per the terms of the written agreements/disclosures provided.  The energy saving improvements failed to pay for themselves over time.

124.     As a result of said Defendants' breaches of the agreement(s) in connection with the work performed and financing thereof, Plaintiff has suffered damages in amount in excess of the Court's jurisdictional minimums, which amount will be proven at trial.

1ST AMENDED COMPLAINT

125.     Plaintiff further seeks, as a result of said Defendants; breaches, restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorney's fees, and such other relief as this Court deems just and proper.

**NINTH CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALINGS**
**(Against All Defendants)**

126.     Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

127.     The documents in connection with the financing, without limitation, the work agreements, the financing agreements and the agreement that secured the debt all include an implied covenant of good faith and fair dealings.

128.     Defendants had a duty of good faith and fair dealings, including, but not limited to, the duty to pay at least as much consideration to Plaintiff's financial interest as to said Defendants' financial interest, as well as the duty to comply with all applicable State and Federal laws.

129.     At all relevant times herein, Defendants agreed to act in good faith and deal fairly with Plaintiff upon soliciting Plaintiff, providing work for Plaintiff and arranging and/or providing for Plaintiff's financing.

130.     As between Defendants and Plaintiff, there was unequal bargaining power given Defendants' business expertise and Plaintiff's advanced age, mental capacity and lack of sophistication.

1ST AMENDED COMPLAINT

131.    Defendants were on actual and/or constructive notice of the facts which indicated the financing should not have been made and the work should not have been performed, including but not limited to, the fact that Plaintiff was on minimal fixed income, and was in excess of 80 years old.

132.    Defendants further breached the implied covenant of good faith and fair dealings by, among other things:

    j.   Failing to put as much consideration to Plaintiff's interests as to Defendants' interests;

    k.   Plaintiff is informed, believes and thereon alleges that Defendants have a pattern of practice of similar bad faith, conspiratorial, conduct toward other borrowers in similar situations of low income and advanced age.

    l.   Defendants profited from the financing provided to Plaintiff.

133.    As a proximate result of Defendants breaches of the covenants of good faith and fair dealing alleged herein, Plaintiff has suffered damages, incurred attorney's fees and costs, the loss of his primary residence of 30 years, emotional distress and other economic losses and damages in an amount in excess of this Court's jurisdictional minimum, which amount will be proven at trial.

## TENTH CAUSE OF ACTION
## ELDER FINANCIAL ABUSE IN VILATAION OF WELFARE & INSTITTIONS CODE §51610 Et SEQ.
### (Against All Defendants)

134.    Plaintiff re-alleges and incorporates herein by reference all other paragraphs of this Complaint as if set forth herein at length, and further alleges as follows:

1ST AMENDED COMPLAINT

135.     At all times mentioned, Plaintiff was an "elder" within the meaning Welfare & Institutions Code §15610.27.

136.     Defendants befriended Plaintiff acting concerned over his need to make energy saving improvements to his home. Defendants worked their way into Plaintiff's confidence and trust.

137.     All Defendants took, secreted, appropriated and/or retained real or personal property of Plaintiff to a wrongful use or with the intent to defraud, or both, Defendants' acts were done in bad faith.

138.     All Defendants assisted with the taking, secretion, appropriation and/or retention of Plaintiff's real or personal property to a wrongful use or with the intent to defraud, or both.  Defendants' acts were in bad faith.

139.     Defendants all owed Plaintiff a duty in their capacity as, among other things, loan officers, consumer finance providers and /or the conduit to the financing obtained.

140.     Using the trust and or relationship of Plaintiff, Defendants' induced Plaintiff to enter into the agreements for work and financing, which was secured against the Plaintiff's primary residence, the Subject Residence, which was against Plaintiff's best interest.  Defendants caused inflated and unjust fees to be charged and lied about repayment terms, all leading to the eventual loss of Plaintiff's personal property and his primary residence to foreclosure. Such behavior constitutes elder abuse as defined in Welfare & Institutions Code § 15610 et seq.

141.    As a result, Plaintiff has suffered monetary damages and emotional distress in an amount in excess of this Court's jurisdictional minimum, which will be proven at trial.

142.    Defendants acted with reckless, oppression, fraud and/or malice in the commission of elder abuse. Said Defendants conduct constitutes an intentional scheme to defraud Plaintiff, and other similarly situated elders, and Defendants (acting in concert) deprived Plaintiff of his home and legal rights. Said Defendants' actions constitute despicable conduct in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary damages from each defendant inclusive, in an amount to be determined at trial.

143.    **All remedies hereunder, including exemplary damages, should be trebled pursuant to Civil Code §3345.**

### PRAYER

**WHEREFORE**, Plaintiff prays for judgment and orders against Defendants, inclusive, as follows:

1.  That judgment be entered in Plaintiff's favor and against Defendants, and each of them;

2.  For an order requiring Defendants to show cause, if any, why they should not be enjoined as set forth below, during the pendency of this action;

3.  For an order stating Defendants engaged in unfair business practices;

4.  For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair practices;

1ST AMENDED COMPLAINT

5. For compensatory and statutory damages, attorney's fees and costs according to proof at trial;

6. For attorney's fees and costs pursuant to Welfare & Institutions Code §15657.5

7. For exemplary damages in an amount sufficient to punish and deter Defendants' misconduct;

8. For treble remedies, including disgorgement and punitive damages for deceptive acts, unfair competition and/or financial elder abuse as provided by California Code §3345.

9. For such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

_____                          Dated: 8/16/2019
Christian McLaughlin, Esq.
Counsel for Manuel Concepcion

## DEMAND FOR JURY TRIAL

Plaintiff Manuel Concepcion demands a trial by jury.

Respectfully Submitted,

_____                          Dated: 8/16/2019
Christian McLaughlin, Esq.
Counsel for Manuel Concepcion

32 of 32