UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL CONCEPCION,<br><br>                      Plaintiff,<br><br>    v.<br><br>YGRENE, INC. *et al.*,<br><br>                    Defendants. | Case No. 19-cv-1465-BAS-MDD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[ECF No. 27]** |

      Plaintiff Manuel Concepcion sued six defendants alleging ten causes of action. (First Amended Complaint, "FAC," ECF No. 3.) As relevant here, Defendant Home Energy Solutions, Inc. moves to dismiss various causes of action. ("Mot.," ECF No. 27.) Plaintiff filed an opposition to the Motion, ("Opp'n," ECF No. 28), to which Defendant filed a reply, ("Reply," ECF No. 32). The Court finds this Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** the Motion.

**I.    BACKGROUND**

      Plaintiff is an 83-year-old single, Hispanic male suffering from the early stages of dementia. (FAC ¶ 11.) Plaintiff used to own and reside at a home in Oceanside, California. (*Id.*) Plaintiff's fixed gross income of $3,034 per month was not enough

to pay his mortgage. (*Id.* ¶ 11.b.) Therefore, his mortgage servicer modified his loan to make his mortgage affordable. (*Id.* ¶ 11.a.) Plaintiff states he lost his home due to the actions of Defendants, through "door to door solicitations peddling green energy/home improvement and financing, namely Property Assessed Clean Energy (PACE) financing." (*Id.* ¶ 2.)

A brief summary of PACE financing is necessary. PACE financing "allows property owners to finance the cost of energy or other eligible improvements on a property and pay for those improvements by entering into a voluntary agreement to place a special assessment on the property." James Milano *et al.*, <u>Recent Developments in Pace Financing,</u> 74 Bus. Law. 519 (2019). Under the California PACE program, "a local governmental entity enters into an agreement with a PACE program administrator that facilitates financing of energy or other improvements on local properties." *Id.* The property owner purchases the improvements from a contractor, and the program administrator provides funding for the purchase through either the sale of municipal bonds or a private market financing source. *Id.* The property owner "then repays the cost of the improvements by entering into a voluntary contractual property assessment with the local government or the program administrator." *Id.* This gives rise to a lien, and the local government collects PACE assessment payments through the county tax collector. *Id.* The obligation is "an assessment against the property and not a personal obligation to the property owner." *Id.* PACE programs take an interest in the property that is senior to any mortgagees' interest. *County of Sonoma v. Fed. Housing Fin. Agency*, 710 F.3d 987, 988 (9th Cir. 2013).

In 2016, a door-to-door salesperson "from Home Energy Solutions, aka Clearview" came to Plaintiff's home and "convinced him that he needed roof repairs and that his house needed to be painted, and that a government program would take care of it all." (FAC ¶¶ 13, 43.) Plaintiff agreed to sign up because he was told that the "energy saving improvements would pay for themselves over time" and that he

qualified for the government program. (*Id*. ¶ 43.) But, in reality, Plaintiff alleges the PACE loan raised his monthly mortgage payment to the point where he could not pay it. (*Id*. ¶ 19.) Normally, PACE financing is secured by a tax lien on the property; homeowners then repay the money as a special tax assessment. Plaintiff acknowledges this in his complaint. (*See id*. ¶ 6 ("PACE . . . is structured as a property tax assessment . . . [which] guarantees its repayment in virtually every scenario, hence no consideration is given to the borrower's finances or ability to repay the loan.").) But, he states in his case, his mortgage servicer was making his tax payments. (*Id*. ¶ 7.) Plaintiff's mortgage payment increased over time because the mortgage servicer was advancing the property tax payments and charging Plaintiff. (*Id*.) Plaintiff could not repay his servicer, so he was placed in default. (*Id*.) Plaintiff received no energy savings from the home improvements. (*Id*. ¶ 52.) The mortgage servicer eventually initiated foreclosure proceedings, Plaintiff lost his home to foreclosure, and he is being evicted. (*Id*. ¶¶ 21–23.) Plaintiff sued multiple Defendants, but, as relevant here, Plaintiff alleges that the salesman who convinced Plaintiff he needed roof repairs works for Defendant Home Energy Services, who does business as a general contractor and provides PACE funding to pay for its services. (*Id.* ¶ 38.)

Plaintiff brings ten causes of action: (1) violation of the Truth in Lending Act; (2) violation of the California Rosenthal Fair Debt Collections Practices Act; (3) violation of the Fair Debt Collection Practices Act; (4) violation of the Real Estate Settlement Procedures Act; (5) fraud/intentional misrepresentation; (6) fraud/negligent misrepresentation; (7) violation of California Business and Professions Code section 17200; (8) breach of implied covenant of good faith and fair dealing; (9) breach of contract; and (10) elder financial abuse. Defendant moves to dismiss the first, second, third, fourth, eighth, and ninth causes of action.

## II.   LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

**III. ANALYSIS**

    **A.    Defendant's Request for Judicial Notice**

Defendant asks the Court to judicially notice five documents. (ECF No. 27-2.) Plaintiff does not address the request, thus, the Court assumes Plaintiff does not oppose it. Defendant first asks the Court to take judicial notice of the articles of incorporation of Home Energy Solutions, Inc. and of Clearview Home Improvements, Inc., as well as the fictitious business name statement of Clearview Home Improvements.

The court may take judicial notice of public records in ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). The articles of incorporation are filed with the State of California and are thus matters of

public record. The fictitious business name statement is also a public, recorded document. *See Better Homes Realty, Inc. v. Watmore*, 16-cv-1607-BEN-MDD, 2017 WL 14000065, at *2 (S.D. Cal. Apr. 18, 2017) (finding a fictitious business name statement to be a matter of public record and judicially noticeable). The Court takes judicial notice of the documents.

Defendant next asks the Court to judicially notice a public website page maintained by the Department of Consumer Affairs, Contractors State License Board, reflecting that a business entity named "Clearview Home Improvements Inc., dba Clearview Home Energy Solutions" held a State of California Contractor's License. As noted below, because Home Energy Solutions, Inc. and Clearview are separate entities, the Court only considers allegations against and arguments of dismissal by Home Energy Solutions. Thus, any information regarding Clearview's status is irrelevant and the Court declines to judicially notice the website.

Finally, Defendant asks the Court to judicially notice Senate Bill 838. Courts may take judicial notice of legislative bills. *California v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1172 (N.D. Cal. 2007). The Court judicially notices the bill.

**B.     Analysis**

It is first important to determine the identity of Defendant. From Plaintiff's perspective, Home Energy Solutions, Inc. and "Clearview" are one and the same. But according to the documents the Court has judicially noticed, there are separate articles of incorporation for Home Energy Solutions, Inc. and for Clearview Home Improvements, Inc. (Exhibits 1 and 2 to ECF No. 27-2.) Clearview filed a public statement indicating its fictitious business names are Clearview Construction and Clearview Home Energy Solutions. (Exhibit 3 to ECF No. 27-2.) From these documents, there is no apparent connection between Home Energy Solutions, Inc. and the entity that Plaintiff generally calls "Clearview." Plaintiff served Home Energy Solutions, Inc., not any Clearview entity. (*See* ECF No. 5.) Although Plaintiff argues in his opposition that there is a "shell game of names" between the

entities, (Opp'n at 7–8), he has not alleged in his complaint how the two entities are the same or even related. Therefore, the Court only considers the claims made against Home Energy Solutions.

Turning to the merits of the allegations, Defendant first argues there is no subject matter jurisdiction over this case. (Mot. at 14.) It is undisputed that Plaintiff asserted federal causes of action, thus, federal question jurisdiction exists on the face of the complaint. It appears that Defendant is arguing that because all of Plaintiff's federal claims fail for one reason or another, no federal question survives and there is thus no subject matter jurisdiction over the remaining claims. Therefore, the Court evaluates each contested claim.

### 1. Truth in Lending Act ("TILA") Cause of Action

Defendant argues Plaintiff's TILA claim fails for various reasons. First, Defendant argues the claim is time barred. A one-year statute of limitations applies to claims for TILA violations. 15 U.S.C. § 1640(e).[1] A TILA violation occurs, and the statute of limitations begins to run, at the time the loan documents are signed. *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). Plaintiff alleges this occurred in March 2016. (FAC ¶ 43.) Plaintiff filed this lawsuit in 2019. It therefore appears from the face of the complaint that the TILA claim is time barred. Plaintiff argues the statute of limitations should be equitably tolled. (Opp'n at 15.)

"Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the

---

[1] Plaintiff asserts, with no support or analysis, that TILA violations carry a three-year limitations period. (Opp'n at 12.) Section 1640 provides that any action under this section must be brought within one year of the date of occurrence of the violation. It also provides that "[a]ny action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought . . . before the end of the 3-year period beginning on the date of the occurrence of the violation." Plaintiff does not allege a violation of section 1639, 1639b, or 1639c. (*See* FAC ¶ 71 (listing the sections of TILA which Plaintiff alleges were violated).) Thus, the one-year limitations period applies.

statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *O'Donnell v. Vencor, Inc.*, 465 F.3d 1063, 1068 (9th Cir. 2006). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. INS*, 272 F.3d 1176, 1194–96 (9th Cir. 2001). "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Id.* In the context of TILA, district courts "can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general [statute of limitations] rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly." *King*, 784 F.2d at 915.

Plaintiff argues that at the time the salesman signed him up for PACE financing, he did not understand that he would be obligated to pay any money, as he was told he was receiving government funding. (Opp'n at 16.) The salesman used his own computer to register Plaintiff for the transaction, and Plaintiff does not own a computer. (*Id.*) Further, for the first 12 months, the loan was dormant and no payments were due. (FAC ¶ 49.) Plaintiff received his first increased monthly mortgage 13 months after the transaction occurred. (Opp'n at 17.)[2]

The Court finds it appropriate to toll the statute of limitations because at the time Plaintiff signed the PACE documents, he alleges he was unaware he was actually entering into a financial obligation. The statute of limitations should be tolled until the time that Plaintiff "discover[ed] or had reasonable opportunity to

---

[2] These allegations are made generally in the complaint and more specifically in the opposition. For purposes of judicial efficiency, the Court considers all of Plaintiff's allegations for equitable tolling even if they are not specifically made in the complaint. But, in his amended complaint, Plaintiff must clearly allege why he was unaware of the financing until 13 months later.

discover the fraud of nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915. Plaintiff alleges he did not understand he had to pay any money for his new roof and home renovations until at least April 2017. But, even if the Court tolls Plaintiff's TILA claim until April 2017, his claim is untimely because he did not file his complaint until 2019. The Court **GRANTS** the Motion to Dismiss this claim. For the sake of completeness, the Court turns to Defendant's second argument for dismissal: that TILA does not apply to PACE financing.

In May 2018, Congress signed into law the Economic Growth, Regulatory Relief, and Consumer Protection Act ("Growth Act"), Pub. L. No. 115-174, 132 Stat. 1296 (2018). Among other things, the Growth Act amended TILA to state that PACE financing was to be subjected to ability-to-repay requirements, i.e., creditors may not make a residential mortgage loan unless they "make[] a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan." *Id.*; 15 U.S.C. § 1639c(a)(1).

Plaintiff received PACE financing in 2016 prior to implementation of the Growth Act. There is no evidence that prior to the Growth Act, PACE was subject to TILA requirements, and there is no indication that the Growth Act is to be applied retroactively. Therefore, Plaintiff has not sufficiently alleged that Defendant violated TILA through the PACE financing. The Court **DISMISSES** this cause of action. If Plaintiff believes he can sufficiently allege facts applying TILA to his case, he may amend the cause of action to do so.

### 2. Fair Debt Collection Practices Act ("FDCPA") and Rosenthal Act Causes of Action

Plaintiff concedes that these two causes of action do not apply to Defendant. (Opp'n at 18.) The Court therefore **GRANTS** the Motion to Dismiss them.

/ / /

### 3. Real Estate Settlement Procedures Act ("RESPA") Cause of Action

RESPA requires lenders and servicers to make certain communications to consumers during the mortgage lending and modification process. *See* 12 U.S.C. § 2601 *et seq*. Plaintiff alleges Defendants violated RESPA by failing to provide him with a servicing statement as set forth in 12 U.S.C. § 2605(a). (FAC ¶ 89.) He also alleges that Defendants received money for referrals of services related to the financing, charged Plaintiff for unnecessary services, and conspired to "up sell" him. (*Id.* ¶ 90.)[3] Plaintiff admits he "is not certain at this time exactly which Defendant were [sic] actually the servicer(s) of the loan at any given time." (*Id.* ¶ 88.) He alleges Defendants violated RESPA through "the conspiratorial nature of the misdeeds" and "Defendants' general failure to properly advise Plaintiff as to the roles and identities of the various entities that were handling financing at any given time." (*Id.*)

Section 2605(a) provides: "Each person who makes a federally related mortgage loan shall disclose to each person who applies for the loan, at the time of application for the loan, whether the servicing of the loan may be assigned, sold, or transferred to any other person at any time while the loan is outstanding." Subsection (f) provides: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . ." 12 U.S.C. § 2605(f).

Defendant first moves for dismissal of the RESPA claim because it is time-barred. Actions brought pursuant to Section 2605 must be brought within three years of the occurrence of the violation and actions brought pursuant to Sections 2607 or 2608 must be brought within one year of the occurrence of the violation. 12 U.S.C. § 2614. Plaintiff argues the limitations period should be tolled. Generally, a RESPA statutory limitations period may be equitably tolled. *Merritt v. Countrywide Fin.*

---
[3] Plaintiff does not elaborate as to how these actions violate RESPA.

*Corp.*, 759 F.3d 1023, 1036 (9th Cir. 2014). As is true for TILA violations, RESPA violations may be tolled "in the appropriate circumstances, . . . until the borrower discovers or had reasonable opportunity to discover the violation." *Id.* at 1040 (quoting *King*, 784 F.2d at 915). For the same reasons articulated above regarding the tolling of the TILA statute of limitations, the Court finds it appropriate to toll the RESPA limitations period until August 2017, when Plaintiff states he became aware of the violation. Plaintiff filed his suit within three years of this date, thus, he has sufficiently alleged his RESPA claim is timely.

Defendant next argues for dismissal of the RESPA claim because Plaintiff has not alleged "the proper capacity of [it] and [the] contractor defendants and that their actions fall within the scope of the federal statutory scheme." (Mot. at 21.) The Court understands Plaintiff's argument that he is unsure of the role of each Defendant at this time. However, Plaintiff does not allege that Defendant is a lender, and Section 2605(a) applies only to those who "make[] a federally related mortgage loan." 12 U.S.C. § 2605(a). Plaintiff has not sufficiently alleged that the RESPA requirements apply to Defendant.

Finally, the Court notes that it is not clear whether PACE financing is considered a loan or federally related mortgage for the purpose of compliance with RESPA in the first place. The parties cite no authority, nor can the Court locate any, discussing the applicability of RESPA to PACE financing. Accordingly, the Court dismisses this cause of action without prejudice and encourages the parties to brief the issue in the future.

### 4. Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing Causes of Action

Plaintiff states Defendant breached the agreement between them by failing to provide him with an affordable loan given his income and age and failing to provide him with a twenty-year repayment term per the terms of the written agreement. (FAC ¶ 123.) Plaintiff also alleges he he did not receive the promised energy saving

improvements. (*Id.*) Defendant moves to dismiss this claim because Plaintiff did not attach the contract or detail the parts of the contract that were breached.

Under California law, a claim for breach of contract premised on a written agreement must provide the relevant terms thereof, either by quoting the contract verbatim or attaching it to the complaint and incorporating it by reference. *Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 459 (1985). But "federal courts 'have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*.'" *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, No. 13-CV-2714 JLS (KSC), 2014 WL 1664272, at *4 (S.D. Cal. Apr. 25, 2014) (citing cases).

It appears that Plaintiff is alleging that a written agreement promised him "an affordable loan" with a "20-year repayment term" and "energy savings [that would] pay for themselves overtime." He alleges that none of this occurred and he was damaged as a result. Thus, he has alleged the specific terms of the written agreement that were breached. Defendant's argument that the subject contract actually "does not contain any of [these] terms" is irrelevant, (*see* Mot. at 22) because the Court accepts Plaintiff's allegations as true at this stage, and Defendant did not provide the Court with the contract. However, Defendant also argues that it (i.e., Home Energy Solutions) is not a party to the contract, instead, Clearview contracted with Plaintiff. (*Id.* at 15.) As noted above, Plaintiff pleads the entities as one and the same and does not specify which entity contracted with him. Without naming the contracting party, Plaintiff has not alleged a breach of contract claim. Therefore, the Court **GRANTS** the Motion to Dismiss this claim with leave to amend so that Plaintiff may clearly specify the parties to the contract and which terms were breached.

Next, every contract "imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 796 (2008). Because Plaintiff fails to allege that a contract exists between him and Defendant, let alone that Defendant breached that contract,

he is unable to allege a breach of the duty of good faith and fair dealing that comes as a part of that contract. The Court therefore **GRANTS** the Motion to Dismiss this cause of action.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss. Plaintiff's TILA and RESPA claims are dismissed with leave to amend to the extent Plaintiff can sufficiently allege these causes of action are timely and apply to PACE financing. Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing causes of action are also dismissed without prejudice. Plaintiff's FDCPA and Rosenthal Act Causes of Action are dismissed with prejudice against this Defendant because Plaintiff admits they are inapplicable.

Plaintiff may file a second amended complaint <u>on or before May 1, 2020</u>. The Court cautions Plaintiff that the amended complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his amended complaint will be considered waived. *See* Civ L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to file an amended complaint or a motion requesting more time by May 1, 2020, Defendant Home Energy Solutions, Inc. will be dismissed from this case and the case will proceed against the remaining Defendants.

**IT IS SO ORDERED.**

**DATED: March 27, 2020**

Hon. Cynthia Bashant
United States District Judge